Den, ex dem. Boyd, v. Banta.

---

[266]         DEN, EX DEM. BOYD, v. BANTA.

1. Proceedings, under the laws, against those who committed treason by joining the British armies during the Revolutionary war.

2. An infant may commit treason and thus subject his estate to forfeiture.

3. In the summary proceedings authorized by the acts of assembly, the same degree of strictness is not required as in common law indictments for treason.

4. If a party call a witness, and examine him as to a fact, which (if proved by the opposite party,) would not operate to his prejudice, unless established by written testimony, yet, as against the party who thus establishes it, it is conclusive.

---

In ejectment for lands in Bergen county.

On the case stated, it appeared that the lessor of the plaintiff claimed, under the deed of the commissioners of forfeited estates, all the right and title of Weirt Banta to the premises in question.

It appeared that Weirt Banta, being seized in fee of the premises, joined the armies of the King of Great Britain after the 4th of October, 1776, and before the 10th of January, 1777 ; that he died about the 25th of December, 1776, being then about nineteen years of age.   On the 23d of October, 1780, an inquisition was found against him, which charged that Weirt Banta, " since the 4th of October, 1776,

and before the 5th of June, 1777, to wit, on or about the 10th of January, 1777, joined," &c.

The mother of Weirt, and the defendant, her son, have held possession of the premises until the bringing of the present ejectment by Boyd, the purchaser.

Several questions were argued at the bar, relative to the extent and operation of the confiscation laws, as applicable to the present case, but the material points decided by the court were the following :

1st. The court resolved that the inquisition in this case was grounded on the act of the 19th of April, 1788, (*Wilson's Laws* 43,) so far as respected the period of the offence, viz., between the 4th of October, 1776, and the 5th of June, 1777, this act not being repealed by that of the 11th of December, 1778, (*Wils.* 67,) as appears by the fourteenth section of the latter act, authorizing *post mortem* proceedings against certain fugitives.

2d. That the forfeiture of the real estate in this case must depend on the fourteenth section of this latter act, as that of April 18th did not forfeit the real estate.

3d. It had been contended, in the argument, that Banta being an infant at the time of joining the British army, he would not incur a forfeiture of his estates under those acts. But, by the court, he being of the age of discretion, was capable of [267] committing a crime; the forfeiture is for the offence, and has no connection with his age; and, however, in civil cases, infancy may save a forfeiture, it is not so in criminal, where it flows from the guilt of the offender.

4th. By the act of June 5th, 1777, (*Wilson, App. 5, No. 4*,) called "An act of free and general pardon," it was enacted that persons who had taken refuge, &c., might surrender themselves to a justice, on or before the first day of August, then ensuing ; and by taking the oaths, and complying with other requisitions, should be discharged from all treasons and other offences specified in the treason act, passed 4th of October, 1776, (*Wilson* 4); and by the same act it was provided that all the personal estate and effects of persons, who shall

not voluntarily surrender, &c., as aforesaid, before the 1st of August, as aforesaid, shall be forfeited; and all alienations thereof, and also of the real estate of such offenders made in the meantime, are declared void.

The counsel for the defendant insisted that the offence for which the acts of the 18th of April and 11th of December, 1778, forfeited the real and personal estates of persons taking refuge with the British armies, between the 4th of October, 1776, and the 5th of June, 1777, was not for joining the enemy, but for neglecting to avail themselves of the benefit of the act of pardon, passed the 5th of June, 1777, as before mentioned. This construction, they contended, derived additional plausibility from comparing the three acts together; and if it was the correct construction, they argued that as Wiert Banta died before the 5th of June, 1777, he was not an offender within the acts of the 18th of April and 11th of December, 1778. The act created the offence after his death.

But the court declared that there was no weight in this argument. They said the crime consisted in joining the armies of the King of Great Britain, which was made treason by the act of the 4th of October, 1776. But no forfeiture could be had under that act, unless by attainder at common law. Then came the act of June 5th, 1777, which recites that many persons had been seduced from their allegiance, &c., and enacts that such offenders might, by voluntary surrender, obtain a pardon.

[268] The very terms and title of this act presuppose a crime already committed, and hold out to actual offenders a remission of punishments actually incurred, and all the other consequences of their crime, upon certain conditions.

The crime, therefore, having been actually committed by joining the armies of the enemy, previous to the 5th of June, 1777, the act of pardon could only operate in favor of those who were living at that period, and chose to comply with the terms and conditions which it prescribed.

The subsequent acts of the 18th of April and 11th of December, 1778, point out the mode of conviction, and the sale

Den, ex. dem. Boyd, v. Banta.

of the estate; and by the 14th section of this last act, it is provided that in case of the death of any person, whose estate is forfeited or subject to forfeiture by the same, before inquisition taken, or judgment entered, every such deceased person shall be proceeded against as if living, either on the act of the 18th of April, 1778, or 11th of December, 1778, as circumstances should require; and in case of final judgment, the estate should be forfeited, &c. The present inquisition is founded on the former act, by virtue of the 14th section of the latter.

As to the case of Lord Duffus, (*Comyns* 440,) which has been cited by the counsel for the plaintiff on this part of the argument, we cannot see that it is analogous to that before the court; and indeed the authority of that case seems to have been since questioned by a highly respectable authority. See *Foster's C. L.* 51, *nota.*

5th. By the first section of the act of December, 11th, 1778, it is enacted that the real estate " belonging to any fugitive or offender, against whom inquisition hath been, or shall be found and returned, and final judgment thereon entered, pursuant to the act of April 18th, 1778, or that *did* or *may* belong to such offender at the time the offence for which such inquisition was or may be found, is or therein may be charged to have been committed, &c., shall be forfeited," &c.

The counsel for the defendant stated that it was proved and admitted as a fact, that Wiert Banta, the offender, died previous to the 10th of January, 1777, which is the time charged in the inquisition as that on which the offence was committed.

[269] They argued from this fact that the estate in question did not belong to Weirt Banta at the time charged in the inquisition; that he was then dead, and the estate rested in Richard Banta, the defendant, his heir-at-law. That as the legislature had, in express words, directed the forfeiture of the estate which belonged to the offender *at the time* charged in the inquisition, it was not within the power of the court to deviate from the strict import of the words used by the legis-

lature, or by construction to make the forfeiture commensurate with the time when the offence was in fact committed. As far as respects the forfeiture under this act, it does not depend on the offence, which fact unquestionably is found by the inquisition, but rests altogether upon the circumstance of the offender's being seized of the estate on the day specified in the inquisition. If on that day he in fact was not seized, then, however, on an attainder at common law, the forfeiture might relate to the treason and the time when it was actually committed, without regard to the day laid in the indictment; yet these acts, which derogate from the common law, are not to be extended by construction ; and, as they prescribe a summary mode of proceeding, and create a forfeiture by reference to the particular day charged in the inquisition, the defendant could not be affected unless the correspondence required by the act actually existed. In other words, the lessor of the plaintiff has not shown a title under regular and legal proceedings. .

With regard to the *post mortem* clause, (section 14,) they contended that this, when properly understood, did not affect their argument. The section in question was designed merely to enable the commissioners to take inquisitions after the death of the offenders, without error ; but as to forfeitures of the real estate, such inquisitions would be governed by the words of the first section.

The inquisition in question, pursuing the form prescribed by the act of assembly of April 18th, 1778, section 1, charged that Weirt Banta, since the 4th of October, 1776, and the 5th of June, 1777, viz., on or about the 10th of January, 1777, did join, &c. Unquestionably, therefore, from the words of this inquisition, although there is a general expression of *about* [270] *that time* contained in it, yet the precise day mentioned is the 10th of January, 1777. If the accompanying general expression does not vitiate the whole, it must be considered as surplusage, and not be allowed by construction to refer backwards and forwards so as to embrace the whole period between October, 1776, and January, 1777, and

Den, ex dem. Boyd, v. Banta.

leave this important fact in the case to be settled by future proof. Under this act, the forfeiture takes place from the time charged in the inquisition, and must therefore commence at some precise and definite period ; but here the only precise and definite time is the 10th of January, 1777, and if that is erroneous, there is no " time charged" in the inquisition at which the offence was committed.

On the part of the plaintiff, on the other hand, it was argued : 1st. That by the inquisition and judgment, it was found of record that Weirt Banta, on or about the 10th of January, 1777, joined the armies of the King of Great Britain. If the record be true, he could not then have been dead. If " on or about" is to be construed as "on" the 10th of January, then the inquisition finds that on that day he joined them ; and as it is contended that he continued seized until his death, the consequence is that these lands belonged to him at the time charged in the inquisition. But the defendant says the finding is not true ; that he in fact was dead before the 10th of January, 1777. This, however, is an averment in direct contradiction to the record, and cannot be admitted.

2d. It was contended that the death of the ancestor before inquisition could only be assigned upon error brought on the judgment ; but that while the proceedings remained unreversed and in full force, they were conclusive against the heir, and gave a sufficient title to the purchaser.

3d. The inquisition in this case has pursued with studied exactness the words prescribed in the form contained in the act of assembly, viz., " that since the 4th of October, 1776, and before the 5th of June, 1777, viz., on or about (such a day) the offender joined," &c. From this it was inferred that no consequence could be drawn from the words used in the first section of the act of 11th of December, 1778, viz., [271] that he should forfeit the lands held "at the time charged ;" for the time charged is on or about, and this form of words being prescribed by the legislature, and inserted in the form which they had directed, is not to be destroyed by

construction, however plausible and ingenious; but the terms employed must receive their ordinary signification. It was known at the time of passing the act that it was extremely difficult, if not frequently absolutely impossible, to prove the precise time when the refugee committed the offence laid to his charge; and the legislature, in consequence, employed a phrase of general and indefinite meaning, in order to prevent these proceedings against a dangerous class of men, whom the interests of the country required to be punished, from being entangled with technical niceties, or quashed on account of technical defects. If, therefore, it is of any importance to the question, it will be found that the time of Wiert Banta's death, as proved, was, in fact, about the 10th of January, 1777, viz., in the month of December, 1776.

PER CUR. The solution of this question depends on the first section of the act of 11th of December, 1778, which forfeits the lands of the offender, "of which he was seized at the time the offence is charged in the inquisition to have been committed." The inquisition in this case charges the offence to have been committed on or about the 10th of January, 1777. The 10th of January is therefore the only certain time mentioned, and it appears by the testimony that Banta was dead at least fifteen days previous.

Our opinion is, that in this case the estate was forfeited. This uncertainty of time on an indictment or inquisition at common law might have been fatal; but the legislature have, in the act under which these proceedings were had, directed the very form of words which has been here pursued.

The defendant has himself produced the testimony to prove at what time his father died; and from this evidence his death appears to have occurred on or about the time charged in the inquisition, viz., in the month preceding. In *Kelynge* 16, it was held that the day in the indictment is not material; and that treason may be laid "on a certain day, and [272] divers days and times before and after;" (a) and

(a) See *Charnock's case*, 1 *Salk.* 288; 2 *Hawk.* 614.

the jury may find defendant guilty on a day long before, and the forfeiture relates to the day found.

An inquisition, therefore, having been found, and judgment entered on it, and the lands sold, and it being proved that on or about the day laid in the inquisition, Wiert Banta was seized, the lessor of the plaintiff is entitled to recover. (a)

The Chief Justice observed that, had it not appeared that the offender was seized of the premises on or about the time charged in the inquisition, he should have doubted whether the plaintiff ought to recover; for unless the purchaser had shown the seizin of the offender on or about the time, it could not appear that the commissioners had a right to convey.  It was also said, and assented to by the whole court, that if a party calls a witness and examines him as to a fact which regularly would not operate against him if proved by the other party, unless proved by written testimony, yet as against the party who thus establishes it himself, from his own witness, it shall be conclusive.

Judgment for the plaintiff.

*Elisha Boudinot* and *R. Stockton,* for plaintiff.

*Aaron Ogden* and *Ab. Ogden,* for defendant.

(a) See *Jackson, ex dem. Williams,* v. *Stokes and Thompson,* 3 *Johns.* **151.**